753 A.2d 1175 (2000)
332 N.J. Super. 445
STATE of New Jersey, Plaintiff-Appellant,
v.
Eugene F. BRADY, Jr., Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted May 1, 2000.
Decided June 30, 2000.
*1176 John J. Farmer, Jr., Attorney General, for plaintiff-appellant (Wendy Alice Way, Deputy Attorney General, of counsel and on the brief).
Alan L. Zegas, for defendant-respondent (Sharon B. Kean, on the brief).
Before Judges HAVEY, A.A. RODRIGUEZ and COLLESTER.
The opinion of the court was delivered by COLLESTER, J.A.D.
Defendant Eugene F. Brady was indicted by a Monmouth County Grand Jury for six counts of second degree endangering the welfare of a child, contrary to N.J.S.A. 2C:24-4b(5)(a), and one count of fourth degree endangering the welfare of a child, contrary to N.J.S.A. 2C:24-4b(5)(b). Defendant pleaded not guilty to all counts and filed a motion to dismiss the indictment on constitutional grounds. The motion judge granted the motion to dismiss on grounds that the child endangerment statute was void for vagueness as applied to defendant and, alternatively, that the prosecutor improperly charged the grand jury to apply the statutory presumption of N.J.S.A. 2C:24-4b(6) that certain persons depicted in pictures were under the age of sixteen. We reverse the trial court's order dismissing the indictment and reinstate the charges.
The events giving rise to defendant's indictment are as follows. On June 12, 1998, Detective Michael A. DiMatteo of the San Bernardino County Sheriff's Department, San Bernardino County, California, logged onto America On-Line (AOL) as part of an undercover police operation targeting child pornography. Detective DiMatteo logged on with the screen name "Tighttone4u" and entered an AOL chat room named, "Special Interestspxaxnxtxixexsyxnxg." He recognized from his training and experience that the chat room name was an attempt to disguise the title "Pantiesyoung."
Detective DiMatteo observed that the chat room users were utilizing a program called "Listme.exe." Upon execution, this program compiles a list of screen names present in a chat room. When such a list is compiled, it is transmitted to each person identified by screen name on the list.
At 8:50 p.m., Detective DiMatteo received an e-mail message from a user identified as "Lostinkiss." The message included a file attachment designated "!!ROBI14.JPG" which depicted an image of a twelve to fourteen year old white female wearing only a string bikini bottom. At 8:52 p.m., he received another e-mail with a file attached as "TINY3.JPG" depicting the same child similarly clothed in a different pose. Finally, at 9:03 p.m., he received a third e-mail with a file attached as "XSWEETO1.JPG" depicting a different twelve to fourteen year old female nude.
On July 1, 1998, Detective DiMatteo obtained a search warrant in California to obtain AOL subscriber information for the person identified by the screen name "Lostinkiss." On July 20, 1998, he received AOL records which reflected that "Lostinkiss" was a screen name belonging to defendant at his address in West Keansburg, New Jersey. On August 17, 1998, Detective DiMatteo forwarded the results of his investigation to the New Jersey State Police which, in conjunction with the Hazlet Township Police Department, began investigating defendant.
Detective Peter Wolf of the New Jersey State Police learned that AOL contacted the FBI regarding "Lostinkiss." AOL, through its own monitoring of user activity, had discovered that "Lostinkiss" transmitted *1177 the following image files on June 28, 1998: "11RAFT.JPG," depicting a nude white female, who appeared to be less than sixteen years old, laying on her back on a raft with her legs slightly spread apart; "14YTWINS.JPG," depicting two nude white females, approximately fourteen years old, masturbating on a couch; and "141414.JPG," depicting three nude white females who were each approximately fourteen years old.
On August 27, 1998, Detective Wolf obtained a search warrant for defendant's residence. On September 3, 1998, New Jersey State Police and Hazlet police executed the warrant. Among other items, the search revealed approximately fifty computer floppy disks. After examining the contents of one disk, the police discovered image files depicting nude females who appeared to be under the age of sixteen.
Defendant was present during the execution of the search warrant. After his arrest, he waived his Miranda[1] rights. He admitted that the disks contained nude images of young girls and boys and that he sent such images to AOL users in chat rooms. He said he did not know that what he had done was wrong and could not understand why the nude images were against the law. He added he viewed the images as a way to relax.
The motion judge dismissed the indictment, holding that N.J.S.A. 2C:24-4b was unconstitutionally vague as applied to defendant. At the time of the charged offenses the applicable statute read as follows:
(4)(a) Any person who knowingly receives for the purpose of selling or who knowingly sells, procures, manufactures, gives, provides, lends, trades, mails, delivers, transfers, publishes, distributes, circulates, disseminates, presents, exhibits, advertises, offers or agrees to offer any photograph, film, videotape, computer program, video game or any other reproduction or reconstruction which depicts a child engaging in a prohibited sexual act or in the simulation of such an act, is guilty of a crime of the second degree.
(b) Any person who knowingly possesses or knowingly views any photograph, film, videotape, computer program, video game or any other reproduction or reconstruction which depicts a child engaging in a prohibited sexual act or in the simulation of such an act, is guilty of a crime of the fourth degree.

[N.J.S.A. 2C:24-4b(4)(a) to (4)(b).]
In concluding that the statute was unconstitutionally vague as applied, the judge relied upon the fact that the statute did not specifically prohibit transmission of image files depicting child pornography on the Internet until a 1999 amendment. L. 1998, c. 126 § 1, effective May 1, 1999. The amended statute now provides:
(4)(a) Any person who knowingly receives for the purpose of selling or who knowingly sells, procures, manufactures, gives, provides, lends, trades, mails, delivers, transfers, publishes, distributes, circulates, disseminates, presents, exhibits, advertises, offers or agrees to offer, through any means, including the Internet, any photograph, film, videotape, computer program or file, video game or any other reproduction or reconstruction which depicts a child engaging in a prohibited sexual act or in the simulation of such an act, is guilty of a crime of the second degree.
(b) Any person who knowingly possesses or knowingly views any photograph, film, videotape, computer program or file, video game or any other reproduction or reconstruction which depicts a child engaging in a prohibited sexual act or in the simulation of such an act, including *1178 on the Internet, is guilty of a crime of the fourth degree.
[N.J.S.A. 2C:24-4b(4)(a) to (4)(b) (underscoring indicates language of amendment).]
The amended statute defines "Internet" as "the international computer network of both Federal and non-Federal interoperable packet switched data networks." N.J.S.A. 2C:24-4b(1). It further states that "`Reproduction' means, but is not limited to, computer generated images." Ibid.
The motion judge considered the legislative history of the 1999 amendments. The Assembly statement, identical to the Senate statement, provided in pertinent part:
Assembly Bill No. 1332, as amended by the committee, clarifies that the depiction and dissemination of child pornography on the Internet constitutes a crime under N.J.S.A. 2C:24-4, the statute establishing the crime of endangering the welfare of a child.
....
The addition of references to the Internet, computer programs and files, and `other reproduction or reconstruction' throughout N.J.S 2C:24-4 broaden the scope of the statute and address the dramatic changes which have occurred in technology and communications networks.
[Assembly Policy and Regulatory Oversight Comm., Statement to Assembly Bill No. 1332 (May 4, 1998) (emphasis added).]
The motion judge interpreted these statements to indicate a recognition by the Legislature that the statute was ambiguous as applied to Internet transmissions of computer image files depicting child pornography and that the amendment changed the scope of the law to cover such conduct. Therefore, the judge held that at the time of defendant's alleged conduct the existing statute was void as unconstitutionally vague as applied.
The void for vagueness doctrine is "essentially a procedural due process concept grounded in notions of fair play." State v. Lashinsky, 81 N.J. 1, 17, 404 A.2d 1121 (1979). The test for vagueness is whether a person of ordinary intelligence may reasonably determine what conduct is proscribed by the statute so that he or she may act in conformity therewith. Kolender v. Lawson, 461 U.S. 352, 358, 103 S.Ct. 1855, 1859, 75 L.Ed.2d 903, 910 (1983); Town Tobacconist v. Kimmelman, 94 N.J. 85, 118, 462 A.2d 573 (1983); State v. Saunders, 302 N.J.Super. 509, 520, 695 A.2d 722 (App.Div.), certif. denied, 151 N.J. 470, 700 A.2d 881 (1997). Where a statute does not provide precise guidelines, it may permit "`a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.' " State v. Jones, 198 N.J.Super. 553, 563, 487 A.2d 1278 (App.Div.1985)(quoting Smith v. Goguen, 415 U.S. 566, 575, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605, 613 (1974)). The test for vagueness "does not consist of a linguistic analysis conducted in a vacuum," but requires a reading of the statute in context with "the reality to which the provision applies." In re Suspension of De Marco, 83 N.J. 25, 37, 414 A.2d 1339 (1980).
We disagree with the interpretation of the amended statute by the motion judge. A change of statutory language by the Legislature may portend a purposeful alteration of substantive law. See William H. Goldberg & Co. v. Division of Employment Sec., 21 N.J. 107, 112-13, 121 A.2d 12 (1956). However, it is equally plausible that the legislative intention was merely to clarify existing law. In re Heller, 73 N.J. 292, 308, 374 A.2d 1191 (1977). In this instance we determine that the 1999 statutory amendment of N.J.S.A. 2C:2-4b was a clarification of existing law as opposed to a substantive change. The purpose of N.J.S.A. 2C:24-4b is to eradicate trafficking in child pornography in any form. The amendment made clear that the statute was intended to apply to the distribution of *1179 child pornography "through any means, including the Internet...." N.J.S.A. 2C:24-4b(4)(a).
We find that N.J.S.A. 2C:24-4b as formulated in 1998 was not unconstitutionally vague as it applied to defendant. Dissemination of child pornography over the Internet is clearly a delivery or transfer under the statute. A reasonable person of ordinary intelligence would have understood that such conduct was prohibited.
The fact that defendant allegedly possessed and electronically transmitted computer image files or .JPG files as opposed to photographs, film or other media listed by the statute does not render the statute void for vagueness. Other jurisdictions have recognized that .JPG files depicting pornographic images of actual children constitute "photographs." People v. Fraser, 264 A.D.2d 105, 704 N.Y.S.2d 426, 429 (2000); State v. Cohen, 696 So.2d 435, 437 (Fla.Dist.Ct.App.1997); Cf. Davis v. State, 916 P.2d 251, 257 (Okla.Crim.App.1996)(computer image files constituted "obscene pictures" under statute). In addition, the .JPG files at issue here also fall under the statute's proscription of "any other reproduction or reconstruction."
As to the issue of whether the prosecutor improperly instructed the grand jury, the 1998 child endangerment statute included a presumption in N.J.S.A. 2C:24-4b(6) that a person depicted in any "photograph or film" who appears to be under the age of sixteen was rebuttably presumed to be under the age of sixteen. Although the prosecutor instructed the grand jury as to this presumption as applicable to computer data files, the motion judge held that the instruction fatally affected the indictment because a computer image was not the same as a "photograph" or "film." In light of our determination that .JPG files qualify as "photographs" under the child endangerment statute we find that the prosecutor did not improperly charge the grand jury as to the presumption.
Reversed.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 478-479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694, 726 (1966).